I have a bottle of water next to me. This is not a prop. This is because I've been struggling with a substantial cold the last couple weeks. And I hope my ability or inability to converse like I normally do doesn't detract from what the purpose or what I'm trying to say in this oral argument. We can hear you fine. You might want to adjust the microphone down a little bit. Very good. Thank you very much. We're dealing with an insurance policy and a law governing a policy. There's a body of law in Minnesota dealing with insurance, and that body of law bears directly, I would submit, on all open issues in this matter. While an insurance policy is generically a contract, the courts in Minnesota view insurance policies differently than other contracts. And this actually view goes back almost close to 100 years, but it's been reiterated in Schenck as well as in Farmers Insurance. And in there, the Schenck court specifically said, and other courts have said likewise, any provision in a policy of insurance which is contrary to statutory provisions is ineffective. So the question is, though, who makes the call? Who calls balls and strikes? Is it the court or is it, as Brighthouse would suggest, the executive branch or the Commerce Department? Well, there's case law in Minnesota that deals precisely on that point. It's Kirsten v. Minnesota Mutual Life. Among other things, Kirsten said, while the opinions of the commissioner on matters of insurance may be helpful, when interpreting an insurance regulation, the court said it was not bound by those interpretations. Moreover, and really to the point in this case, the interpretation of a statute is a duty we cannot shift to the commissioner. So in terms of Chevron, Chevron doesn't exist in Minnesota when it comes to insurance matters. Yet Brighthouse argues that the insurance commissioner should have the exclusive ability to evaluate, to look at an insurance policy and determine if it is readable to somebody of average intelligence, education, and experience. One of the issues, one of the problems in that in this particular case is, A, we don't know, we don't know what the insurance commissioner does. We don't have any idea of the process it uses to examine policies to determine if they're readable or understandable. Now, the insurance commissioner has a lot of powers in this State. Subpoena documents, subpoena people, very broad powers in the Minnesota statutes. So I know what you're saying about the pure readability issue, but doesn't the — isn't this an area for the commissioner to decide? It's interesting conceptually. It's an interesting argument conceptually in this regard. Theoretically, the insurance commissioner should have already approved the policy. So now you're basically saying now the commissioner is going to be asked again to reverse course, to reverse his previous opinion and say, well, no, I made a mistake because, you know, that policy was not readable and understandable. It doesn't have to go there. It can hold hearings. You know the statute, I bet, that I'm referring to, 45027. It can hold hearings and conduct investigation, examine books, publish information. But that's — And subpoena power. Goodness gracious. Go ahead. He's got a lot of power, but he doesn't have the power to interpret. He has the power to enforce. And the other thing, Mr. Graff or anybody else, there is no right to petition the commissioner directly to force him to have that hearing. It's purely at the prerogative of the commissioner. So he could write a letter every day to the commissioner saying, I need to have this reviewed, and all he has to do is sit on it. And that's one of the problems, too, with the review process. We don't know. There's been no discovery as to just exactly this process the commissioner uses to review a policy for its readability purposes. We — for example — not example, but the law specifically says that the policy, the insurer can submit a — I think it's the Flesch test and a certification as to its readability. The insurance commissioner simply sits on its desk for 60 days, and automatically it's approved. So in essence, the insurer is the one that is calling the balls and strikes there. The insurer is the one to make the determination as to whether it's readable. And also, that's a form. One of the elements that came out in this case in the motion to dismiss, Brighthouse submitted a template, not the actual form that Mr. Graff has. And so the template is broad and structured. It doesn't have the specific provisions that Mr. Graff's policy has. So whatever is done there, that policy, the readability of it only relates to a template form. It doesn't get into the readability of the specific policy issued to Mr. Graff, which is really the issue in controversy. His policy has to comply with forms, though, right, to be sold in the State? Pardon me? His policy has to comply with forms in order to be sold in the State, right? There's other provisions, but we're not talking about other laws or other policies. We're talking about the readability of the policy. Yes. Yeah. The insurance company does have to file forms in order to comply with the law, in order to sell it. In order to sell it, yeah. Absolutely. And the only form that we don't even really know for certain what exactly was filed by Travelers in 2004. We ask for the documents on file. There is nothing there. So we don't know the process used. We don't know whether or not the insurance commissioner availed itself of this technique where they can simply sit on it for 60 days with the certification and test test, and all of a sudden it's approved. In the meantime, Mr. Graff has got a policy here that's choking him to death financially because of the premiums, the spike in premiums that occurred in 2022. And so that's the issue here. In other words, do the courts have the right to make the call as to whether or not this policy is readable or not, or does that lie exclusively with the Department of Commerce? The Supreme Court of Minnesota said in Kirsten, in no uncertain terms, the interpretation of a statute, not enforcement, but the interpretation of a statute is a duty we cannot shift to the commissioner. In response to your question, sure, the commissioner has all kinds of powers to enforce a law, but that does not give him the power to interpret as to whether or not the policy itself was readable. This law deals with composition, structure, format. It doesn't the law in question doesn't deal with whether or not it's understandable. And that gets into what courts are for, not the executive branch of government. There is also the limitation issue, which I thought was one of the most vexing problems in this case. And the lower court said without any issue dealing with whether there was any damage element or any injury, they just summarily said the statute of limitations began to accrue on day one when the policy was issued. Well, again, if the policy violated the law, as noted in my reply brief, that violation starts on day one, it continues on day two, on day 200, on day 2,000. If it violates the law, the law, the policy doesn't get cured by the absence of time. There is the case laws, the case law in Minnesota all points out that if there is, again, a violation of a provision in an insurance policy or if there is a provision in an insurance policy that violates the law, that provision is unenforceable. And Schenck said if the entire policy is tainted, the entire policy then falls. And so what's interesting about all those cases dealing with that aspect of that issue, in not one of those cases did the issue come up as to a limitations question. There's a whole series of cases in the unjust enrichment section of the reply brief. On not one occasion did the courts clutch pearls or wring their hands about whether or not there was a limitations issue. They simply said categorically if there's a provision in this policy that is illegal, it is unenforceable. Game, set, match. The other element in this thing, as far as, you know, the declaratory judgment aspect of this thing, also is of some moment the lower court dismissed this case with prejudice. This is a declaratory judgment action. In declaratory judgment actions, the issue is, is there a justiciable issue and is there a limitations issue? And if there is, in this case the lower court said there was a limitations issue, then the case should, the court has no jurisdiction over the matter. It's not to be dismissed as the way they had done it. It's a jurisdictional issue. They lack jurisdiction to adjudicate the matter. That aspect of this case was not really addressed by the lower court, and as a result that's still sort of lingering out there. In terms of the readability of the law, as to whether or not it's readability, one other aspect of this thing, Brad House also argues extensively that there's, that there's no right of action. There are a number of other cases that are cited in this, in the brief, and particularly in the Clyde brief, where there are other laws in Minnesota dealing with insurance and policies of insurance, whereby these, these, these courts have allowed controversies to move on and where the courts have actually allowed the adjudication of the issues involving those cases. So there, those cases were not, there, there is rights of action, and just like with this case, there is no specific, well, there is no specific right of action. If the Supreme Court says they're the exclusive party to interpret the law, then it stands to reason that somebody's got to be the party to litigate it. It's not going to be the Commissioner. It's going to be the policyholder himself. I have no further comments to make regarding this matter. I guess I have some, I have some time reserved for you. You may reserve the balance for rebuttal, if you wish. I do. Thank you, sir. Thank you. Thank you. Mr. Horwood, we'll hear from you. Good morning, Your Honors, and may it please the Court. My name is Drew Horwood, and I represent Defendant DiPelle, Bright House Life Insurance Company. Plaintiff alleges that until recently he could not understand the life insurance policy he executed nearly 20 years ago, because the policy did not use language that was easy to read or understand. But as Plaintiff's policy explained 20 years ago, and as common sense affirms, the cost of insurance coverage increases as the insured person ages, dramatically  The insured Robert Graff was 78 years old when the policy was issued. He is now 98 years old. Everyone dies, and life insurance coverage reflects that risk. But regardless of whether or not the policy is actually confusing, Plaintiff has failed to state any legally sufficient claim for relief. As the District Court concluded, Plaintiff's claims were brought under or brought more than a decade too late, under a statute that lacks a private right of action, and sought equitable relief in the face of a written contract. That decision was correct, and this Court should affirm. I'd like to start with the statute of limitations issue. As the District Court concluded, the face of the complaint in the attached policy shows that counts 1 and 2, which are the statutory claim and the implied covenant claim, are time-barred. The statutory and implied covenant claims necessarily accrued when the policy was issued in November 2004. Claims for statutory violations accrue at the time of the violation. Breaches, causes of action for contract-based claims, accrue at the time of the breach. If Brighthouse violated the law by issuing an unreadable policy or breached the implied covenant by, again, his allegations say, issuing an unreadable policy, that breach occurred when the policy was issued, regardless of whether or not damage has occurred until later. And if you look at his complaint, he wants all of his money back. He wants the contract void from the beginning. He is even alleging that he was damaged from the very beginning. The allegations show that counts 1 and 2 are explicitly tied to the language of the policy when it was issued. There has been no change in the language. The terms have not changed. The language has not changed. He has repeatedly disclaimed, both in his briefs and during the District Court proceedings below, that any subsequent breach has occurred. He says this is not a breach of contract case. He's argued that that means that the statute hasn't started rolling at all. What it really means is that his claims are pinned to the date of the issue. It's November 2004. And, second, no reasons exist to toll the statute to a later date. Throughout his briefs, plaintiff has argued that it didn't — the statute didn't start to run until he understood the policy, until he received the ledger document in April 2022. But it's irrelevant whether or not he understood what the — what his personal understanding of what the policy meant is not a basis to toll the statute of limitations. As the District Court concluded, the discovery rule does not apply for any number of reasons, particularly in cases where the allegations do not sound in fraud or misrepresentation. The claims do not involve that, and he does not allege that here. Moreover, even if the discovery rule did apply, it is — there's both a subjective standpoint and an objective standpoint. It's the statute — the discovery rule doesn't apply, or the statute of limitations begins rolling when the plaintiff knew or should have known of the facts underlying his claim. The facts underlying his claim are in the policy when it was issued. It's whether or not the language in the policy was readable. His understanding whether or not he understood and when, you know, exactly what the policy meant and required him to do, isn't the fact underlying his claim. The issue here is what the policy said. Was it confusing or not? The court will pardon an analogy. If I open up a copy of Finnegan's Wake, I don't need to understand what exactly it means to know that the language that is in front of me is hard to read. Whether or not he understood exactly that the policy, that the premiums could increase and when he realized that, as he claims in November in 2022, is a different question than did he have the policy, was he able to read it. An objective person can look at the policy, and if they thought it was hard to read, they should have brought that claim at any point before March 2017, which for the Court of Appeals is what the suit by. With respect to the private right of action point, I'm sorry, I'd like to address one more point. Plaintiff's counsel addressed sort of a continuing violation, the idea that the policy has been in violation the entire time, and in his reply brief, he raised the continuing violations doctrine as an independent basis to hold the statute of limitations to a later point. The continuing violations doctrine does not apply here. The continuing violations doctrine, as the cases he cites at the very page he cites them, is a doctrine from conspiracy law. It relates to antitrust and civil RICO cases. It does not apply in standard run-of-the-mill contract actions or statutory violations. This Court has not expanded it beyond RICO and antitrust cases. And with respect to the private right of action, the question here is simple. Plaintiff's counsel has argued both here and below separation of powers issues. He brought up Chevron today, which is not something that has come up before in this case. The question is simply, does the statute provide an explicit or implicitly a private right of action for relief? There is no argument. It's never been argued here that the statute explicitly provides a private right of action. Plaintiff concedes this. Nor does it clearly imply a private right of action from its text. If you look at the statute, if you look at the Act, the Readability Act as a whole, it is concerned with the regulatory powers and responsibilities of the Minnesota Commissioner of Commerce. He has to review and approve policies before they can be issued to Minnesota consumers. That's what the statute requires. It tells the Commissioner to consider a variety of technical considerations. The specific statute in question here, 72C.06, instructs insurers to make sure that they're readable before they file the policies with the Commissioner. There is no reference to purchasers of insurance policies. There is no indication from the text that private litigants can sue to enforce this statute. And moreover, as Judge Benton referenced earlier, other statutes that broadly define the Minnesota Commissioner of Commerce's powers give the Commissioner powers to investigate, enforce, revoke licenses if necessary, impose fines. And as we've cited in our briefs, the Commissioner has done so with respect to this exact statute at least twice in recent years. These are the two regulatory proceedings that we cited in our brief. This is how things have been handled historically. There is just no indication that private litigants can sue. I guess a potential buyer files suit to force the Commissioner to do what it says he shall consider in the statute, 72C.06. I do not believe the private party can force the Commissioner to do this. I suppose the private party could always bring a lawsuit against the State. Does Minnesota have taxpayer standing? No. Okay. Thank you. Proceed. But notwithstanding that, you know, in a number of cases, both the Minnesota Supreme Court and this Court have reaffirmed with respect to other similar health insurance, similar insurance statutes that concern health insurance, car insurance, that private rights of action were not implied under those statutes. This is the Morris case, Jader and Palmer. The Morris case explains, as the Minnesota Supreme Court explained, insurance is a heavily regulated industry with, quote, comprehensive schemes of administrative enforcement, end quote, that are ill-designed for private rights of action. This is the scheme that has been set up. This is an administrative enforcement scheme. And finally, with respect to the unjust enrichment claim, plaintiff has raised a number of new arguments and cited a number of new cases about this void as a matter of public policy. You know, provisions contrary to law are ineffective. The cases he cites, these are not unjust enrichment claims. None of these cases involve unjust enrichment claims. They involve construing a contract or an insurance policy, yes. They discuss whether or not provisions are contrary to law. None of these save the deficiencies with pleading with pleading an unjust enrichment claim in the face of a valid contract. As the district court explained, they were governed by a valid contract. And as this Court explained in the Loftinist case, which is cited in our briefs, asserting an unjust enrichment claim in the face of a valid contract, but where there's been no breach, simply amounts to an attempt to rewrite the contract. That's what he's trying to do here. And furthermore, any enrichment was not unjust because Bright House is just asserting its rights under the policy. Plaintiff is getting exactly what he agreed to almost 20 years ago, insurance coverage in the event the insured Robert Graff dies while the policy is active. If he continues, if the plaintiff continues to make payments through the death of his father or his father's 100th birthday, he'll receive the $800,000 death benefit. That hasn't changed. Insurance of any kind is a transfer of risk. Sometimes the risk you're protecting against happens. Sometimes it doesn't. We don't know. We wouldn't be here if Robert Graff died in 2005 after plaintiff made one payment. Insurance policy would have ended up being a good deal for him, but we don't know. If your home, if your house burns down or if it floods, it could happen the day before the policy starts, the day after it ends. And you might always end up paying more in premiums than you receive in benefits. That does not make the payments that you receive and whether or not you receive a return the way you expected unjust. It's been a long morning. Unless the Court has any further questions, I will yield the rest of my time and refer to the White House's briefs. Thank you very much. Well, you're not required to use all of your time, but we don't want you to defer on account of the long morning. Okay. Thank you for your argument. Thank you. Mr. Kuhlman, we'll hear rebuttal. Thank you. Let's see if I can respond to some of these charges or claims, statements. In regards to this issue about using another law to enforce this readability law, it seems to me if you're going to do statutory interpretation, does that not require this Court to look at the legislative history of that enforcement law and the to determine if that's what the legislature intended to have that law used to be used to enforce this statute? Because that's kind of what the linguistic argument is here in the first go-around was, you know, what does the law say? What's the intention of the legislature? What was the intention of the legislature with respect to this law that simply says it's got to be readable and understandable? Well, everything is confined to, okay, what is it? Well, that's the law that has to be examined. Brighthouse wants to go beyond that law and use the enforcement provisions of another law that was enacted at another time on another date for another purpose and have that enforcement power used to enforce this law. Number two, and again, to do that, that's not interpretation. That's legislating. When the Court starts cherry-picking another law and says, I'm going to use the provisions of that law to enforce this law, that's what the legislature is supposed to do. The Court is supposed to interpret the law before them, and this law doesn't have any provision for remedies, penalties. But again, the Supreme Court said when it comes to interpreting the law, they are the exclusive one. They don't defer to the Commissioner. No Chevron there. In fact, if anything, this case is sort of the inverse of Chevron, which is we don't know what the Commissioner did, if it did anything. We don't know if the Commissioner discharged its responsibilities, which are clear, which is to look at the policy to determine if the policy meets all these structural components. For all we know, the Insurance Commissioner took the say-so of the insurance companies, put them on the desk for 60 days, bingo, policy is cleared. Well, that's not discharging the responsibilities as contemplated by the legislature. And the only we need to have discovery to find out if the Commissioner, what the Commissioner did, when they did it, and how they did it, to see if what kind of procedure they used to determine if these policies are readable. Again, the issue is whether Mr. Graff's policy is readable, not whether some form that was submitted 20 years ago that doesn't have all the elements of the true policy in there readable and understandable. This business about unjust enrichment, the Schenck case and all those cases in there deal with some kind of equitable remedy, which is what unjust enrichment is underlined two, three, four times. All these cases said that if there is a violation of a law, that that provision cannot be enforced, and as Schenck said, if the whole policy is tainted, the whole policy falls. And that aspect of it has not been, you might, well, that aspect of it needs to be reviewed, and that's reviewed by the courts, not the Commissioner. The other thing with limitations, they say it started on day one. Again, you have to have an injury. The lower court simply said they assume that there was an injury. There's been no demonstration of any injury which begins to toll the limitations. If you have no injury, you can't bring a cause of action. If there's no injury, then the limitations period doesn't start. That was the reason why Mr. Graff filed the declaratory judgment action in the first place, because there was no breach, there was no damage element, but there was concern as to whether or not this policy violated this law that said it had to be clear and understandable. And the declaratory judgment? I'm afraid your time has expired. I'm sorry. Thank you for your argument.